**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
**The Honorable Michael E. Romero**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 09-17437 MER |
| CCI FUNDING I, LLC, | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| JANICE A. STEINLE, Chapter 11 Trustee | ) | Adversary No. 10-1418 MER |
| for the bankruptcy estate of | ) | |
| CCI FUNDING I, LLC, a Delaware limited | ) | |
| liability company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Signed/Docketed |
| TRICO REAL ESTATE, L.P., | ) | August 15, 2012 |
| | ) | |
| Defendant. | ) | |



**ORDER**

THIS MATTER comes before the Court on the following:

●   *CCIF's Express Consent to Jurisdiction and Statement Regarding Governing Authority* (Docket No. 73) filed by Plaintiff CCI Funding I, LLC through Janice A. Steinle, its Responsible Officer ("CCIF Statement of Consent");

●   *Statement of Non-Consent* (Docket No. 74) filed by Defendant Trico Real Estate, L.P. ("Trico Statement of Non-Consent");

●   *CCIF's Request for Forthwith Hearing Regarding Trico's Statement of Non-Consent* (Docket No. 75) filed by Plaintiff CCI Funding I, LLC through Janice A. Steinle, its Responsible Officer ("Request for Hearing");[1]

---

[1] The Court entered an Order dated April 30, 2012 denying the Request for Hearing, but the legal argument contained in the Request for Hearing will be considered by the Court for the purposes of this Order.

- *Response to CCIF's Request for Forthwith Hearing Regarding Trico's Statement of Non-Consent* (Docket No. 76) filed by Defendant Trico Real Estate, L.P. ("Response");

- *Reply to Trico Real Estate, L.P.'s Response to CCIF's Request for Forthwith Hearing Regarding Trico's Statement of Non-Consent* (Docket No. 77) filed by Plaintiff CCI Funding I, LLC through Janice A. Steinle, its Responsible Officer ("Reply");

- *Memorandum of Law on This Court's Constitutional Authority to Hear and Issue Final Judgment in this Adversary Proceeding* (Docket No. 78) filed by Plaintiff CCI Funding I, LLC through Janice A. Steinle, its Responsible Officer ("CCIF Brief");

- Trico's *Brief in Support of Statement of Non-Consent and Regarding the Court's Constitutional Authority* (Docket No. 80) filed by Defendant Trico Real Estate, L.P. ("Trico Brief"); and

- *Motion to Close the Record on Issue of Bankruptcy Court's Constitutional Authority* (Docket No. 81) filed by Plaintiff CCI Funding I, LLC through Janice A. Steinle, its Responsible Officer.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B)[2] because it seeks disallowance of claims against the estate.

## UNDISPUTED BACKGROUND FACTS[3]

On April 22, 2009, Commercial Capital, Inc. ("CCI") filed for relief under Chapter 11 of the Bankruptcy Code. Two days later, on April 24, 2009, Plaintiff CCI Funding I, LLC ("CCIF") filed for relief under the same Chapter 11. On April 30, 2009, the Court entered an Order Authorizing Joint Administration of the CCI and CCIF cases.[4] Prior to

---

[2]  Unless otherwise noted, all future statutory references in the text are to Title 28 of the United States Code.

[3]  The background facts provided in this Order are based upon the admitted allegations as set forth in Steinle's Amended Adversary Complaint (Docket No. 25) and Trico's Answer to Amended Adversary Complaint (Docket No. 36).

[4]  CCIF, Chapter 11 Case No. 09-17437-MER, Docket No. 21. On October 30, 2009, this Order was vacated and trustees appointed in each of these cases. *Id.* at Docket No. 69.

filing for relief, CCI and CCIF were in the commercial real estate lending and loan servicing business.

CCI made three loans to Trico in the total face amount of $9,175,000.00 (the "Loans") pursuant to three separate promissory notes dated September 28, 2007 (each, a "Promissory Note" and collectively, the "Promissory Notes"), and three separate loan agreements dated September 28, 2007, between Trico, as Borrower, and CCI, as Lender (each, a "Loan Agreement" and collectively, the "Loan Agreements").  The respective principal face amounts of the Promissory Notes were $3,058,333.00, $3,058,335.00 and $3,058,332.00. Charles Snider, III, in his capacity as president of Trico, executed each of the Promissory Notes and Loan Agreements.  Each Promissory Note provided its principal outstanding balance would bear interest at the one-month LIBOR rate plus 4%, and all amounts outstanding under each Promissory Note would be due and payable on December 28, 2008 (the "Maturity Date").  Pursuant to Recital A of the Loan Agreements, the purpose of the Loans was funding to purchase certain real property and related improvements located in Kingwood, Harris County, Texas including certain condominium units, service units and related real property interests (collectively, the "Property"), in the Westminster House Condominiums, a 134-unit senior independent living facility.

Each of the Loans was secured by a separate Deed of Trust executed by Trico, as Grantor, to Gene L. Jameson, as Trustee, for the benefit of CCI, as Beneficiary (collectively, the "Deeds of Trust").  The Deeds of Trust were recorded on various dates at various reception numbers in the real property records of Harris County, Texas.  The Deeds of Trust, taken together, encumber the Property.  As additional security, each of the Loans is further secured by a separate Security Agreement dated September 28, 2007, between Trico, as Borrower, and CCI, as Lender (collectively, the "Security Agreements").

Thus, the disputes between the parties relate to a set of core documents which were executed to effect the funding for the purchase of the Property, namely, the Promissory Notes, the Loan Agreements, the Deeds of Trust, and the Security Agreements.  Trico files its proofs of claim in reliance upon these documents.

## PROCEDURAL HISTORY

On November 10, 2009, in the underlying CCIF bankruptcy case, the Court entered an *Order Approving the United States Trustee's Appointment of Chapter 11 Trustee for CCIF*, appointing Janice Steinle ("Steinle") as Chapter 11 trustee for CCIF.[5] On June 4, 2010, Steinle filed the above-captioned adversary proceeding against Trico and James T. Markus in his capacity as Chapter 11 trustee of the CCI estate

---

[5]  CCIF, Chapter 11 Case No. 09-17437-MER, Docket No. 83.

("Markus").  The *Adversary Complaint*[6] ("Complaint"), contains the following two claims for relief: 1) turnover of the outstanding indebtedness owed by Trico under the Loans and Promissory Notes, including $8,470,102.61 in principal, plus accrued interest, late charges, reasonable attorneys' fees and other costs of collection; and 2) disallowance of the proofs of claim filed by Trico in the CCIF and CCI cases.

On July 19, 2010, Trico filed its *Answer to Adversary Complaint*,[7] denying any default on the Loans and denying its proofs of claim should be disallowed.  Trico raised thirteen affirmative defenses, which included a challenge to CCIF's standing and argued that ownership of the Loans must first be determined in the related proceeding styled *Steinle et al. v. Markus*, Adversary Proceeding No. 09-1739-MER ("Ownership Proceeding") before the Trico dispute could be resolved.

On July 19, 2010, Markus filed his *Answer*[8] to the Complaint, admitting the general factual allegations.  With respect to the claims for relief, Markus alleged Trico is in default under the loan documents, and asserted Steinle, by agreement with Markus, has standing to go forward alone to pursue the collection of the loans.  In addition, Markus admitted Trico filed proofs of claim, but stated he did not have information as to the validity of the claims.  Markus raised an affirmative defense of failure to state a claim.

On June 29, 2011, WestLB AG, New York Branch ("WestLB") filed a Motion to Intervene, seeking to intervene to assert claims and protects its interests.[9]  Trico filed a *Response to WestLB's Motion to Intervene*,[10] seeking an order denying the Motion to Intervene and, in the alternative, if the Motion to Intervene was granted, seeking an extension of all pending deadlines in the case.  The matter was set for a hearing.  However, six days prior to the scheduled hearing West LB withdrew its Motion to Intervene.[11]

---

[6]  Docket No. 1.

[7]  Docket No. 6.

[8]  Docket No. 7.

[9]  Docket No. 24.  On December 7, 2011, in the underlying CCIF bankruptcy case, this Court confirmed the *Fourth Amended Plan of Liquidation Under Chapter 11 Filed by WestLB, New York Branch*. *See* CCIF, Chapter 11 Case No. 09-17437-MER, Docket No. 956.  Steinle is the Responsible Officer of CCIF pursuant to the confirmed plan.

[10]  Docket No. 28.

[11]  Docket No. 33.

In the interim, on July 1, 2011, Steinle filed a *Motion for Leave to Amend Adversary Complaint*[12] and the *Amended Adversary Complaint* ("Amended Complaint").[13]  The Motion for Leave advised the Court the ownership issues between Steinle and Markus had been resolved, and requested leave to file an amended complaint with claims against Trico only.  Trico filed a response addressing the deadline to file its answer to the Amended Complaint, but also stating Trico had no objection to Steinle filing the Amended Complaint.[14]  The Court granted the Motion for Leave to Amend on July 26, 2011.[15]  The Amended Complaint asserts two claims for relief: 1) judgment against Trico on the Promissory Notes in the principal amount of $8,470,102.61 plus accrued interest, late charges, attorneys' fees and costs; and 2) disallowance of Trico's proofs of claim in the CCIF and CCI cases.[16]

On July 12, 2011, this Court entered its Amended Judgment in the Ownership Proceeding.  The Amended Judgment determined, *inter alia*, certain "promissory notes, deeds of trust, mortgages, guarantees, all other documents and property interests related thereto, and any and all proceeds thereof, are the property of the bankruptcy estate of [CCIF], free and clear of any claims and interests of the bankruptcy estate of [CCI]."[17]  The obligations specifically listed in the Amended Judgment as being owned by the CCIF bankruptcy estate, free and clear of any claims or interests of the CCI bankruptcy estate, included each of the Loans.[18]

On August 9, 2011, Trico filed its *Answer to Amended Adversary Complaint*[19] denying any default on the Loans, denying its proofs of claim should be disallowed, and asserting fourteen affirmative defenses.  After filing its Answer, Trico amended its previously filed proofs of claim.  Upon review of the claims filed in both the CCIF and CCI bankruptcy cases, as relevant to this adversary proceeding, the Court finds Trico filed the following amended proofs of claim on August 23, 2011:

---

[12] Docket No. 26.

[13] Docket No. 25.

[14] *See* Docket No. 27.

[15] Docket No. 30.

[16] *See* Docket No. 25.

[17] Amended Judgment, Adversary Proceeding No. 09-1739-MER, Docket No. 146, at ¶ 2.

[18] *See id.*, at ¶ 2.  Specifically, the Amended Judgement describes each of the Promissory Notes as Loan 30, Loan 31 and Loan 35.

[19] Docket No. 36.

1)     Trico's claim against CCIF: Amended Proof of Claim No. 16-2 in the unsecured amount of $5,437,768.98 plus additional damages to be determined, which amended Trico's timely filed Proof of Claim No. 16-1.

2)     Trico's claim against CCI: Amended Proof of Claim No. 134-2 in the unsecured amount of $5,437,768.98 plus additional damages to be determined, which amended Trico's timely filed Proof of Claim No. 134-1.

(collectively, the "Amended Proofs of Claim").

On November 30, 2011, Trico filed its *Motion for Partial Summary Judgment and Memorandum in Support*,[20] seeking judgment in its favor on CCIF's First Claim for Relief, collection under the Promissory Notes.  On January 9, 2012, Steinle filed *The Responsible Officer's Cross-Motion for Summary Judgment and Response In Opposition to Trico Real Estate L.P.'s Motion for Partial Summary Judgment*.[21]  On January 30, 2012, Trico filed its *Reply in Support of Its Motion for Partial Summary Judgment*[22], and Trico filed its *Response in Opposition to the Responsible Officer's Cross-Motion for Summary Judgment*[23] on March 5, 2012.  On March 19, 2012, Steinle filed *The Responsible Officer's Reply in Support of Cross-Motion for Summary Judgment*.[24]

On April 3, 2012, the Court held oral arguments on Trico's *Motion for Summary Judgment* and on *The Responsible Officer's Cross-Motion for Summary Judgment*.  At the commencement of oral argument on these motions, Trico raised for the first time the issue of the Court's constitutional authority to hear this matter.  The Court ordered the parties to "advise the Court, by April 10, 2012, whether they expressly consent to the Court hearing this matter. If there is not consent from all the parties, the parties shall brief the issue of the Court's Constitutional authority to hear this matter, pursuant to the Supreme Court's *Stern* decision, on or before April 30, 2012."[25]

Pursuant to the Court's Order, Steinle filed the CCIF Statement of Consent on April 9, 2012, expressly consenting to the Court's jurisdiction and constitutional authority

---

[20] Docket No. 45.

[21] Docket Nos. 54 through 61.

[22] Docket No. 65.

[23] Docket No. 69.

[24] Docket No. 70.  The Court shall address the summary judgment issues by separate order in due course.

[25] Docket No. 71.

to hear and enter final orders and judgment in this proceeding.[26]   On April 10, 2012 Trico filed the Trico Statement of Non-Consent, stating "[a]t this time, Trico does not consent to the Court's constitutional authority."[27]

The following day, Steinle filed her Request for Hearing.  Trico filed its Response on April 13, 2012, and Steinle filed a Reply on April 18, 2012.  In the Request for Hearing, Steinle argues Trico's Statement of Non-Consent contradicts controlling law, and is improper because Trico has already consented to this Court's authority.  CCIF asked for an immediate ruling on the cross-motions for summary judgment, or a forthwith hearing on the Trico's Statement of Non-Consent.  Trico's Response argues the Supreme Court's opinion in *Stern* may prevent this Court from adjudicating this matter.  Steinle's Reply contends neither *Stern* nor other recent case law supports Trico's position.  On April 30, 2012, the Court entered an Order finding as follows:

> IT IS THEREFORE ORDERED the Request for Forthwith Hearing on Trico's "Statement of Non-Consent" is hereby DENIED, but the legal argument contained in the Request, Response, and Reply will be considered by the Court as briefing pursuant to its Order of April 3, 2012.

> IT IS FURTHER ORDERED the parties may, by May 10, 2012, file any additional briefing they deem necessary on the issue of this Court's Constitutional authority to hear the above-captioned adversary proceeding.

On April 30, 2012, the CCIF Brief and the Trico Brief were timely filed by the respective parties regarding the *Stern* issues.

## DISCUSSION

As noted above, the central dispute in this adversary proceeding concerns the claims among the parties under the Promissory Notes, the Deeds of Trust, the Loan Documents and the Security Agreements.  Trico filed the Amended Proofs of Claim in connection with these documents.  Steinle alleges Trico owes money to the CCIF estate under these documents, and seeks to disallow Trico's claims.  Trico alleges CCIF did not meet certain funding obligations under the same documents and are entitled to claims against the CCIF and CCI estates.  The claims at issue are inextricably tied to these documents, and any determination on the allowance or disallowance of Trico's claims cannot exist independently from a determination of liability under those writings.

Trico contends this Court does not have the constitutional authority to determine Steinle's First Claim for Relief, which seeks a judgment against Trico and a

---

[26] *See* Docket No. 73.

[27] Docket No. 74.

determination of the indebtedness owed in connection with the three Promissory Notes.[28]  Trico asserts this Court may not hear Steinle's First Claim for Relief, and provides four arguments in support of its argument.

First, Trico maintains this Court does not have constitutional authority to determine the First Claim for Relief under the dictates of *Stern*,[29] and seeks entry of an order permitting the parties to litigate the First Claim for Relief in state court.[30] According to Trico, the First Claim for Relief is "a breach of contract case which could be independently brought by [Steinle] against Trico as a Colorado state court proceeding"[31] and the  resolution of the Second Claim for Relief for disallowance of the Amended Proofs of Claim "will not resolve the promissory note issues raised by the First Claim for Relief."[32]

Second, Trico argues the lack of constitutional authority prevents this Court from entering findings of fact and conclusions of law.  Specifically, Trico states since the First Claim for Relief is a "core" proceeding under § 157, this Court may not even issue recommended findings and conclusions, as it could do in a "non-core" "related-to" proceeding under § 157(c)(1).[33]  Rather, according to Trico, this Court lacks any authority over the First Claim for Relief.  Relying on a single post-*Stern* case addressing recovery of fraudulent transfers, *In re Blixseth*,[34] Trico concludes the First Claim for Relief "is clearly a core claim that could be heard and decided by this Court but for the lack of constitutional authority raised in *Stern*.  The core nature of the First Claim for Relief precludes the parties and this Court from treating the claim as a non-core matter."[35]

---

[28]  *See* Docket No. 25, at p. 14-19.

[29]  *Stern v. Marshall*, ___U.S.___, 131 S.Ct. 2594, 180 L. Ed. 2d 475 (2011) *reh'g denied,* 132 S. Ct. 56, 180 L. Ed. 2d 924 (2011).

[30]  *See* Docket No. 80, at p. 3-5.

[31]  *Id.* at p. 5, ¶ 13.

[32]  *Id.* at p. 5, ¶ 14.

[33]  *See id.* at p. 5-7.

[34]  *In re Blixseth*, 2011 WL 3274042 (Bankr. D. Mont. 2011) (slip copy).  The Court notes the U.S. Bankruptcy Court for the District of Montana subsequently modified its order, stating its earlier decision interpreting *Stern* as depriving a bankruptcy court of subject matter jurisdiction to hear a fraudulent transfer claim was "flawed." *See In re Blixseth*, 463 B.R. 896, 907 (Bankr. D. Mont. 2012).

[35]  Docket No. 80, at p. 7, ¶ 19.

Third, Trico, again assuming the Court lacks constitutional authority, states "this Court may not hear and decide [Steinle's] First Claim for Relief because doing so exceeds its subject-matter jurisdiction."[36]

Finally, Trico argues it cannot consent to this Court's constitutional authority because the First Claim for Relief is a core claim, and the "constitutional authority issue raised in Stern cannot be circumvented by transforming a core claim into a non-core claim and applying a consent analysis [to] unique non-core cases."[37]

By contrast, Steinle contends Stern does not prevent this Court from hearing the First Claim for Relief and Second Claim for Relief because resolution of these claims are a necessary part of the claims allowance process.[38]  Relying on the Mercury Companies[39] decision, Steinle asserts Trico has already irrevocably consented to this Court's ability to enter a final judgment on Steinle's claims.[40]  Specifically, Steinle notes Trico previously consented to both the jurisdiction and the constitutional authority of this Court in its Answer to the Amended Adversary Complaint "as well as extensively litigating this adversary proceeding by filing and pursuing its Motion for Partial Summary Judgment, propounding written discovery, and submitting to the deposition of its principal, Charles Snider."[41]  In the alternative, Steinle contends even if the Court may not enter final judgment on the First Claim for Relief, the Court should submit proposed findings of fact and conclusions of law to the state court.[42]

---

[36]  Id. at p. 10, ¶ 28.

[37]  Id. at p. 12-13, ¶ 34.

[38]  See Docket No. 78, at p. 2.

[39]  Mercury Companies, Inc. v. FNF Sec. Acquisition, Inc., 460 B.R. 778, 781 (D. Colo. 2011).  In Mercury Companies, the district court denied the motion to withdraw the reference finding the parties had consented to the bankruptcy court entering final orders by admitting in their initial pleadings that the proceeding was core.  Id. at 782.

[40]  See Docket No. 75, at p. 2; Docket No. 77, at p. 2-5.

[41]  See Docket No. 77, at p. 4.

[42]  See Docket No. 78, at p. 5-6.  Because the Court determines it has the authority to determine the First Claim for Relief and the Second Claim for Relief, the Court will not reach Steinle's alternative argument.

A.      *Stern v. Marshall*[43]

In *Stern*, Vickie Marshall ("Vickie") was married to J. Howard Marshall, II ("Howard").  Vickie expected to receive an inheritance from this relationship; Howard did not include Vickie in his will.  Rather, Howard's son, E. Pierce Marshall ("Pierce") was designated as the beneficiary of Howard's estate.  Before Howard passed away, Vickie filed suit in Texas state probate court, asserting Pierce fraudulently induced Howard to sign a living trust that did not include her.  Pierce denied any fraudulent activity and defended the validity of Howard's trust and will.  After Howard's passing, Vickie did not receive her desired inheritance, and subsequently filed for bankruptcy protection.

In Vickie's bankruptcy case, Pierce initiated an adversary proceeding against Vickie alleging Vickie had defamed him, and seeking a finding his defamation claim was nondischargeable.  Pierce also filed a proof of claim in the underlying bankruptcy case to recover damages for his defamation claim. Vickie responded to Pierce's initial complaint by asserting truth as a defense to the alleged defamation and by filing a counterclaim for tortious interference with the gift she expected from Howard.[44]

Based upon the facts before it, the United States Supreme Court held § 157(b)(2)(C) granted bankruptcy courts the statutory authority to render final judgments on the core matter of a debtor's counterclaims against a claimant; however, bankruptcy courts "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."[45]  The Supreme Court recognized the limitation of this holding, clearly stating "Congress, in one isolated respect, exceeded [the] limitation in the Bankruptcy Act of 1984" to enter final orders,[46] and found a "narrow" exception to the constitutional authority of bankruptcy courts under § 157(b)(2)(C), a provision governing counterclaims by the estate against claimants.[47]

The Supreme Court propounded the following two-pronged test to determine whether a bankruptcy court has constitutional authority to adjudicate an action:

> *Granfinanciera's* distinction between actions that seek "to augment the bankruptcy estate" and those that seek "a *pro rata* share of the bankruptcy

---

[43] *Stern v. Marshall*, ___U.S.___, 131 S.Ct. 2594, 180 L. Ed. 2d 475 (2011) *reh'g denied,* 132 S. Ct. 56, 180 L. Ed. 2d 924 (2011).

[44] *Id.* at 2611.  Although not provided here, for an extensive summary of the procedural posture of the *Stern* matter, *see In re USDigital, Inc.*, 461 B.R. 276, 280-81 (Bankr. D. Del. 2011).

[45] *Id.* at 2620.

[46] *Id.*

[47] *Id.*

*res*," *ibid.*, reaffirms that Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; **the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process**.[48]

Thus, under *Stern*, bankruptcy courts may decide cases seeking a *pro rata* share of the bankruptcy *res*, but not cases seeking to augment the estate.

In other words, despite Congress' express designation of "counterclaims by the estate against persons filing claims against the estate"[49] as core proceedings, bankruptcy courts lack constitutional authority to render final decisions in cases where resolution of a **debtor's independent state law counterclaim** does not stem from the bankruptcy itself or is not necessary to resolve the allowance or disallowance of a claim against the estate.[50]  If either prong of the test is satisfied (*i.e.* the action either stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process), the bankruptcy court has constitutional authority to enter a final order.  If neither prong is satisfied, the bankruptcy court lacks such authority to enter final judgment and may only submit proposed findings of fact and conclusions of law to the district court.[51]

## B.   This Court has Constitutional Authority to Determine the First Claim for Relief and the Second Claim for Relief.

The *Stern* decision is a focused holding that "does not change all that much" and should be considered in such context.[52]  Expansion of the narrow holding of *Stern* to a separate core matter under § 157(b)(2) is not warranted where the Supreme Court's plain intent was to limit the application of the holding.  This Court previously joined the wide range of courts interpreting *Stern* as a narrow opinion, and has taken the following position on constitutional authority:

> *Stern* did not make any rulings as to a bankruptcy court's subject matter jurisdiction, but dealt instead with a bankruptcy court's power to enter final,

---

[48]  *See id.* at 2618 (emphasis added).

[49]  § 157(b)(2)(C).

[50]  *Stern*, 131 S.Ct. at 2611 ("Here [the debtor's] claim is a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy.").

[51]  As discussed herein, *supra*, if the proceeding is "non-core" than the parties must consent for a bankruptcy court to submit findings to the district court.  Such consent is unnecessary for core proceedings by operation of § 157.

[52]  *Stern*, 131 S.Ct. at 2620.

binding judgments as to a certain narrow group of state law actions. *Stern* addressed a bankruptcy court's authority to hear and make a final determination of a debtor's common-law counterclaim to a proof of claim filed against the bankruptcy estate.[53]

The *Stern* Court was concerned the literal language of § 157(b)(2)(C) was overbroad and gave bankruptcy courts core jurisdiction over all debtors' counterclaims instead of jurisdiction over only those with an integral relationship to bankruptcy matters.[54]   *Stern* thus distinguishes between claims which are integrally related to a bankruptcy estate and claims which "simply attempt[] to augment the bankruptcy estate."[55]  Claims which are integrally related to a bankruptcy estate are those which are "deemed essential to a limited regulatory objective."[56]   A claim which augments a bankruptcy estate is "the very type of claim we held in *Northern Pipeline* and *Granfinanciera* must be decided by an Article III court."[57]  Although the common usage of "augment" is broad enough to include claims which are integrally related to a bankruptcy estate, the Supreme Court's usage in *Stern* reflects an intent to carve out and allow claims, such as those in this adversary proceeding, which are in fact integrally related to the claims process.

Therefore, in the present matter, the degree of integration between Steinle's claims and Trico's defenses form the essence of the constitutional issue before this Court.  The "core" – "non-core" distinction is not relevant here because Steinle and Trico admitted all claims for relief in the Amended Complaint are core in their respective pleadings.[58]  The Court agrees, and finds all claims asserted in this proceeding are core.

With respect to the first prong of the *Stern* test, the Court determines Steinle's Second Claim for Relief objecting to the allowance of the Amended Proofs of Claim is

---

[53] *In re DeLaFuente*, 10-25220 MER, 2012 WL 1535848, at *3 (Bankr. D. Colo. Apr. 30, 2012) (internal citations omitted).

[54] *See Stern*, 131 S.Ct. at 2605.

[55] *Id.* at 2616.

[56] *Id.* at 2613.

[57] *Id.* at 2616.

[58] Docket No. 25, at p. 2, ¶¶ 4-5; Docket No. 36, at p. 1, ¶ 1; Docket No. 76, at p. 3, ¶ 8; Docket No. 80, at p. 3, ¶¶ 4-6.  The consent issue is discussed further in footnote 61, *infra*.

clearly a matter that stems from the bankruptcy itself.[59]  By filing the Amended Proofs of Claim in the underlying bankruptcy cases of CCI and CCIF, Trico triggered the process of claims allowance and disallowance.  The question remaining, therefore, is whether the First Claim for Relief seeking judgment on the Promissory Notes satisfies either prong under *Stern* confirming the constitutional authority of this Court to hear and determine those claims as being part of the claims adjudication process, or whether they are simply mechanisms for augmenting the debtor's estate.

As noted above, *Stern* strips bankruptcy courts of authority only where debtors' state law counterclaims cannot be fully resolved in the bankruptcy claims adjudication process.  The instant adversary proceeding comprises a quintessential claims adjudication.  Trico filed Amended Proofs of Claim, thereby constituting *prima facie* evidence of the validity and amount of the claims.  Through the Amended Complaint, Steinle objected to the allowance of Trico's Amended Proofs of Claim, and asserted claims against Trico as the borrower under the Promissory Notes.  Trico set forth certain affirmative defenses which specifically reference the Loans.[60]

As noted, the operative documents are the Promissory Notes, the Loan Agreements, the Deeds of Trust, the Security Agreements, and the Amended Proofs of Claim directly related to these documents.  A determination of liability under these documents is inextricably linked to a determination of the allowance of Trico's Amended Proofs of Claim based on the same documents.  Steinle's claims for relief and Trico's Amended Proofs of Claim all arise from the same operative facts and documents.  Stated differently, a determination of liability under one set of documents to the transaction necessitates an evaluation of the allowance of claims under the same documents.  Thus, the Court finds the First Claim for Relief is integrally related to the bankruptcy estate, and will be fully resolved through the claims allowance process.[61]

Based on the foregoing, the Court concludes the First Claim for Relief will necessarily be resolved as part of the claims allowance process, in satisfaction of the two-prong test articulated in *Stern*.  Therefore, this Court has constitutional authority to

---

[59]  Such actions are "core" proceedings in which a bankruptcy court may enter a final order. *See Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) ("[B]y filing a claim against the bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims.' . . . If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process. . . . In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship.") (internal quotation omitted).

[60]  Docket No. 36, at p. 2-3, ¶¶ 1-14.

[61]  The Court also notes there exists an argument that all parties have consented to this Court's adjudication of all claims raised in this case.  However, in light of the enunciated ruling herein on the constitutional authority possessed by this Court to hear this dispute, the consent issue need not be addressed.

hear and render a final decision on all claims for relief as alleged in the Amended Complaint.

**C.    This Court has Statutory Authority and Subject Matter Jurisdiction to Determine the First Claim for Relief and the Second Claim for Relief.**

Trico further argues the Court does not have subject-matter jurisdiction to hear or decide the First Claim for Relief.[62]  This argument lacks any merit, and in any event, is moot based on the Court's conclusion it has constitutional authority to hear the First Claim for Relief.  With respect to subject-matter jurisdiction, the *Stern* Court explained:

> Because "[b]randing a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system," *Henderson v. Shinseki,* 562 U.S. ——, —— – ——, 131 S.Ct. 1197, 1201–03, 179 L.Ed.2d 159 (2011), we are not inclined to interpret statutes as creating a jurisdictional bar when they are not framed as such.  See generally *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 516, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character").

> Section 157(b)(5) does not have the hallmarks of a jurisdictional decree. To begin, the statutory text does not refer to either district court or bankruptcy court "jurisdiction," instead addressing only where personal injury tort claims "shall be tried."

> The statutory context also belies Pierce's jurisdictional claim.  **Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court.**  See §§ 157(b)(1), (c)(1).  **That allocation does not implicate questions of subject matter jurisdiction.**  See § 157(c)(2) (parties may consent to entry of final judgment by bankruptcy judge in non-core case).[63]

Thus, the *Stern* decision expressly states subject-matter jurisdiction is not implicated under § 157.

---

[62] Trico admits "[t]his Court has statutory authority regarding Trico's proof of claim and [Steinle's] Second Claim For Relief pertaining to the proof of claim."  Docket No. 76, at p. 2, ¶ 4.  Thus, the Court need only address the First Claim for Relief because the Court's statutory authority to adjudicate the Second Claim for Relief is undisputed.

[63] *Stern*, 131 S. Ct. at 2606-07.

Section 1334 vests in district courts original and exclusive jurisdiction of all cases under Title 11.[64]   District courts are also vested with original, but not exclusive, jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11.[65]   Thus, if an adversary proceeding falls within the scope of § 1334(b), the district courts have jurisdiction over the adversary proceeding.

A bankruptcy court has jurisdiction over an adversary proceeding by operation of § 157, which allows each district court to "provide that any or all cases arising under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."[66]   The United States District Court for the District of Colorado has referred all proceedings arising under title 11, or arising in or related to a case under title 11, to the United States Bankruptcy Court for the District of Colorado pursuant to D.C.Colo.LCivR 84.1.

Steinle alleged "[p]ursuant to 11 [sic] U.S.C. §1334, FED. R. BANKR. P. 7001(1) and D.C.COLO.LCivR 84.1(A), this Court has jurisdiction to hear and enter judgment on the claims in this adversary proceeding."[67]   Trico admitted this allegation in its Answer to the Amended Complaint, even noting Steinle's incorrect reference to Title 11 instead of Title 28 of the United States Code.[68]   Furthermore, Trico concedes the "First Claim for Relief is clearly a core claim that could be heard and decided by this Court but for the lack of constitutional authority raised in *Stern*."[69]   As a result, this Court has the statutory authority to address the claims raised and there is no basis to now claim this Court lacks subject matter jurisdiction.

## CONCLUSION

Accordingly, based on the foregoing,

IT IS HEREBY ORDERED the relief sought in Trico's *Brief in Support of Statement of Non-Consent and Regarding the Court's Constitutional Authority* (Docket No. 80) is DENIED.  The parties shall be prepared to proceed with trial in this matter as previously scheduled by order of this Court, so this Court may hear and render a final decision in this proceeding.

---

[64]   *See* § 1334(a).

[65]   *See* § 1334(b).

[66]   § 157(a).

[67]   Docket No. 25, at p. 2, ¶ 5.

[68]   Docket No. 36, at p. 1, ¶ 1.

[69]   Docket No. 80, at p. 7, ¶ 19.

IT IS FURTHER ORDERED, given the Court's consideration of the parties' respective pleadings, the relief sought in the *Motion to Close the Record on Issue of Bankruptcy Court's Constitutional Authority* (Docket No. 81) is GRANTED.  The record is closed with respect to the issue of the Court's constitutional authority to hear and enter final judgment in this adversary proceeding.

Dated: August 15, 2012                    BY THE COURT:

 

Michael E. Romero
U.S. Bankruptcy Judge